IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**KELVIN FRAZIER,**
        **Petitioner,**

**v.**                                                    **Case No.  3:09cv340/WS/MD**

**WALTER A. MCNEIL,**
        **Respondent.**
_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed a response requesting dismissal of the petition for failure to exhaust state court remedies.  (Doc. 8).  Petitioner has responded in opposition to dismissal.  (Doc. 13).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a state inmate currently incarcerated at Santa Rosa Correctional Institution.  He challenges a July 11, 2008 decision by prison officials to retain him on Close Management III ("CMIII") status.  According to petitioner, after exhausting his administrative remedies he filed a petition for writ of habeas corpus in the Circuit

Court of Santa Rosa County, Florida ("Circuit Court"). (Doc. 1, Ex. A, pp. 11-24 in ECF). The clerk of the Circuit Court did not open a case file or assign a case number. Rather, she returned petitioner's habeas corpus petition and supporting documents to him without filing, attaching a copy of a March 10, 2008 order entered in a previous mandamus case (Santa Rosa County Circuit Court case number 2007-CA-000102). That March 10, 2008 order provided, in relevant part:

> The Clerk of the Court is directed
>
> (5) to accept no further civil filings from Petitioner unless accompanied by the full statutory filing fee; if received without the filing fee, they shall be returned to him without filing and with a reference to this Order; and
>
> (6) to accept no further pro se filings from Petitioner; if received, they shall be returned to him without filing and with a reference to this Order.

(Doc. 1, pp. 59-60 in ECF).

On September 28, 2009, petitioner sought review of the Circuit Court's action by filing a petition for writ of certiorari in the Florida First District Court of Appeal ("First DCA"). Since his state habeas petition was returned without an original order but instead pursuant to the March 10, 2008 order issued in another case, petitioner identified the March 10, 2008 order as the order of which he sought certiorari review. (Doc. 1, Ex. "D," p. 25 in ECF). He explained in his certiorari petition, however, that the Circuit Court had not assigned his habeas case a new case number or issued an original order disposing of the case, but had simply refused to file his petition based on the March 10, 2008 order. (*Id.*, pp. 25-27 in ECF). The First DCA assigned the certiorari proceeding case number 1D08-4834. No lower tribunal case number was identified. On October 7, 2008, the First DCA issued an order construing the certiorari petition as one "seek[ing] review of an order denying indigency entered on March 10, 2008." (Doc. 1, Ex. "E," p. 42 in ECF). The order noted that it appeared the certiorari petition was untimely filed, and that the time limit for filing a petition for

writ of certiorari (30 days) is jurisdictional.  The court directed petitioner to show cause why his certiorari petition should not be dismissed for lack of jurisdiction. (*Id*.).

Petitioner responded by explaining that he had filed his certiorari petition within 11 days of receiving his returned habeas documents from the Circuit Court clerk, and that the Circuit Court clerk had used the 7-month old March 10, 2008 order as the basis for returning his documents.  He therefore asserted that his certiorari petition was timely filed.  (Doc. 1, Ex. "F," pp. 43-47 in ECF).  On November 7, 2008, petitioner's certiorari petition was dismissed without written opinion.  *Frazier v. McNeil*, 993 So.2d 517 (Fla. 1st DCA Nov. 7, 2008) (Table) (copy at Doc. 1, p. 48 in ECF).  The mandate issued on February 25, 2009.  (*Id*., p. 49 in ECF).

On February 24, 2009, petitioner filed a petition for writ of habeas corpus in the Florida Supreme Court seeking immediate release to open population.  (Doc. 1, pp. 81-84 in ECF).  The petition was treated as one for mandamus, assigned Case Number SC09-395, and dismissed on March 31, 2009 pursuant to petitioner's notice of voluntary dismissal.  *Frazier v. McNeil*, 7 So.3d 1098 (Fla. Mar. 31, 2009) (Table); *see also* Doc. 8, App. E, docket sheet for First DCA Case Number 1D08-4834.

On April 30, 2009, petitioner field a petition for writ of mandamus in the Florida Supreme Court seeking to compel the First DCA to "enforce" its mandate in Case Number 1D08-4834 and require the Circuit Court to hear his state habeas case.  (Doc. 1, pp. 72-77 in ECF).  The petition was assigned Case Number SC09-794 and dismissed on July 13, 2009.  (Doc. 8, App. F).  The order of dismissal stated, "Having determined that this Court is without jurisdiction to consider the petition for writ of mandamus under any or all of the jurisdictional bases described in article V, section 3(b)(3) and 3(b)(7), Florida Constitution, the petition is hereby dismissed.  *See Stallworth v. Moore*, 827 So.2d 974 (Fla. 2002).  No motion for rehearing will be entertained by the Court." *Frazier v. McNeil*, 14 So.3d 1003 (Fla. July 13, 2009) (Table).

Petitioner filed the instant § 2254 petition on August 9, 2009.  (Doc. 1, p. 8 in ECF).


## DISCUSSION

<u>Respondent's Request for Dismissal</u>

Respondent seeks dismissal of the petition on the grounds that petitioner failed to exhaust his state court remedies.  (Doc. 8, p. 1).  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[1] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).

---

[1]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2557 and n. 1, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).

Respondent construes from the exhibits attached to petitioner's federal habeas petition that petitioner is relying on three state court cases to demonstrate his exhaustion of state court remedies: Santa Rosa County Circuit Court Case Number 07-872; Santa Rosa County Circuit Court Case Number 07-102; and First DCA Case Number 1D08-4834. (*Id.*, p. 2).

Respondent argues that petitioner cannot be deemed to have properly exhausted his state court remedies through Circuit Court Case Number 07-872, because that state habeas case was filed nearly a year prior to the July 11, 2008 CM

decision, and involved a June 12, 2007 decision to retain petitioner on CM status. Thus, "it would have been chronologically impossible for the July 11, 2008 CM decision to be reviewed by the circuit court in Case No. 07-872-CA01." (Doc. 8, p. 6).

Respondent further argues that petitioner cannot be deemed to have properly exhausted his state court remedies through Circuit Court Case Number 07-102, because that case also predated the July 11, 2008 CM decision, and furthermore was considered a mandamus petition in which petitioner sought transfer to a different institution. As such, Case Number 07-102 "would not be a vehicle for proper state court exhaustion for a federal habeas challenge for the CM decision of July 11, 2008, because its filing predated the CM decision, the case concerned the non-habeas issue of prison *transfer*, and appellate review of the case was still ongoing at the time Frazier filed the instant federal habeas corpus case." (*Id.*, p. 6).

Lastly, respondent contends that First DCA Case Number 1D08-4834 would not constitute proper state court exhaustion of the July 11, 2008 CM decision, because the case was treated by the First DCA as a petition for writ of certiorari seeking review of an order denying insolvency status entered March 10, 2008. Respondent explains, "[t]he March 10, 2008, indigency order predates the July 11, 2008 CM decision. Any attempt to a [sic] piggy-back a new CM challenge into this case did not result in review on the merits of such. Moreover, that case was dismissed for lack of jurisdiction, and when petitioner sought further review in the Florida Supreme Court, that court dismissed for lack of jurisdiction." (*Id.*, p. 7).

Based on the foregoing, respondent claims that petitioner "did not properly exhaust his challenge to the CM decision of July 11, 2008. At present, petitioner has not given Florida state courts the opportunity to fully review his claim. Accordingly, Frazier's claim is precluded from review in federal court, and the instant petition should be dismissed based on Frazier's failure to exhaust his state court remedies." (*Id.*, p. 7).

The problem with respondent's argument is that it fails to acknowledge or discuss petitioner's September 2008 attempt to exhaust his state court remedies by filing a petition for writ of habeas corpus in the Circuit Court. That attempted filing did not predate the July 11, 2008 CM decision. Indeed, it expressly identified the July 11, 2008 CM decision as the subject of the habeas challenge. When that filing was rejected by the Circuit Court clerk, petitioner sought review in the First DCA by filing the petition for writ of certiorari in First DCA Case Number 1D08-4834. Thus, contrary to respondent's contention, petitioner's reference to Case Number 1D08-4834 is not an attempt to improperly "piggy-back" a new CM challenge to an old habeas case. Case Number 1D08-4834 was part of petitioner's attempt to exhaust the present CM challenge. Petitioner identified the March 10, 2008 order as the order of which he was seeking certiorari review because that order was the clerk's stated basis for rejecting his state habeas petition.

Because respondent does not acknowledge petitioner's attempt at exhaustion in the Circuit Court, much less assert that any of the state court actions discussed above constitute a state procedural default ruling adequate to bar federal habeas review, the undersigned cannot recommend dismissal of this case on respondent's proffered basis.

## Consideration of the Merits of Petitioner's Claims

Regardless of whether petitioner exhausted his state court remedies, his application for habeas corpus relief should be denied. *See* 28 U.S.C. § 2254(b)(2) (2009)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Petitioner's federal habeas petition raises seven grounds for relief:

1.  The July 2008 decision retaining petitioner on close management violates petitioner's due process rights, because the Florida Department of Corrections ("DOC") violated its own rules. (Doc. 1, pp. 5, 16-17 in ECF).

2.    Petitioner has a protected liberty interest in remaining in the general population, and prison officials deprived him of that interest when they failed to follow their own rules.  (*Id.*, pp. 5, 18 in ECF).

3.    The conditions of close management impose an atypical and significant hardship on petitioner when compared to the conditions of prisoners in the general population.  (*Id.* pp. 6, 19 in ECF).

4.    The DOC's boilerplate denials of relief during the administrative grievance process did not adequately address petitioner's issues.  (*Id.*, pp. 6, 19 in ECF).

5.    Petitioner's retention on close management due to a 2004 assault violates double jeopardy principles, because the 2004 assault was the basis for petitioner's initial placement on close management.  (*Id.*, pp. 7, 20-21 in ECF).

6.    Petitioner's retention on close management constitutes cruel and unusual punishment in violation of the Eighth Amendment, because prison officials  knew petitioner should have been released from close management.  (*Id.*, pp. 7, 22-23 in ECF).

7.    Claims relating to retention in close management may be raised in a petition for writ of habeas corpus.  (*Id.*, pp. 7, 23 in ECF).

In Grounds 1-3, petitioner challenges the July 11, 2008 CM decision on due process grounds.  The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  Here, petitioner was not deprived of life or property; he is therefore entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment.  In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court identified two situations in which a prisoner, who has already been deprived of his liberty in the ordinary sense of the word, can be further deprived of his liberty such that due process protections are implicated.  The first is "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court."  *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citing *Sandin*, 515 U.S. at 484,

115 S.Ct. at 2300). The second is "when the [government] has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 1291 (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300).

Here, it plainly appears from the face of the petition and exhibits in the record that petitioner has not established a protected liberty interest in remaining free from the conditions of close management. Petitioner does not describe the conditions of his confinement, other than to disclose that the July 11, 2008 decision was to retain him on Close Management III status. (Doc. 1, p. 12 in ECF).

The administrative rules of the Florida Department of Corrections define Close Management as "the confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800(1)(d) (2009). There are three levels of Close Management, with CMI being the most restrictive single cell housing level and CMIII being the least restrictive level. Fla. Admin. Code r. 33-601.800(1)(d).

According to the administrative rules, unless there is an indication of a security problem or there are facts to suggest that on an individual basis exceptions are necessary for the welfare of the inmate or the security of the institution, the inmates in close management are provided the same clothing, bedding, meals and opportunities for correspondence as inmates in the general population. Inmates in close management are allowed to retain several items of personal property, comfort and hygiene. Fla. Admin. Code r. 33-601.800(10). Although canteen purchases are restricted for the first 30 days in close management, after that period inmates in CMIII are allowed to purchase items from the canteen once per week. (*Id*.). While in close management, an inmate's movement within the institution and contacts with

other individuals are restricted. However, inmates in CMIII are still allowed the following: contact visits (one two-hour contact personal visit every 14 days), access to the day room area for social purposes (up to five days per week, not to exceed 4 hours per occasion), exercise, and telephone privileges (one telephone call every seven days). Fla. Admin. Code r. 33-601.800(11)(d). CMIII inmates are eligible for work assignments either inside or outside the close management unit, including restricted labor squads, work assignments within other close management units, and work assignments usually designated for open population inmates. Fla. Admin. Code r. 33-601.800(13)(b). Lastly, unlike inmates in more restrictive close management, inmates on CMIII are escorted within the unit and to exercise areas attached to the unit as well as to all program and privilege activity participation without restraints. Fla. Admin. Code r. 33-601.800(14)(c).

In light of the foregoing and the dearth of allegations in the petition concerning petitioner's confinement conditions, this court cannot say that the conditions of petitioner's confinement are outside the normal range and limits of custody, or present an atypical and significant hardship on petitioner such that due process protections are implicated. As petitioner has not established a constitutionally protected liberty interest in being free from retention in CMIII, his due process claims must fail. *Compare Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (holding that pretrial detainee's allegations supported finding of liberty interest under *Sandin* where detainee alleged he was confined under extremely harsh conditions-in solitary confinement (under conditions unlike other pretrial detainees or even convicted prisoners), locked in an extremely small, closet-sized space, and with minimal contact with other human beings for a prolonged time exceeding 500 days), *with Chandler v. Haas*, No. 1:07cv145/MMP/AK, 2008 WL 2096380, at *1 (N.D. Fla. May 16, 2008) (concluding that inmate had no protected liberty interest in being kept out of close confinement), *and Shaarbay v. Smith*, No. 3:07cv374/LAC/MD, 2007 WL 4180970, at *2 (N.D. Fla. Nov. 20, 2007)

(concluding that change in custody classification from general population to close management did not implicate due process protections), *and Powell v. Ellis*, No. 3:07cv160/MCR/EMT, 2007 WL 2669432, at *4 (N.D. Fla. Sept. 7, 2007) (holding that prisoner plaintiff had no constitutionally protected interest in particular classification), *and Adamson v. McNeil*, No. 3:08cv231/RV/EMT, 2008 WL 5231869, at *2-3 (N.D. Fla. Dec. 12, 2008) (holding that prisoner had no constitutionally protected liberty interest in remaining free from a change in classification from CMIII to CMII).

In Ground 4 petitioner appears to challenge the process provided during the administrative grievance process, arguing that the DOC did not adequately address his issues.  This claim provides no basis for federal habeas relief, because a prisoner has no constitutionally-protected liberty interest in an inmate grievance procedure.  *Dunn v. Martin*, 178 Fed. Appx. 876, 878 (11th Cir. 2006); *Baker v. Rexroad*, 169 Fed. Appx. 61, 62 (11th Cir. 2005) ("Although we have not yet considered this issue, we agree with other circuits that have held that [inmate grievance procedures] are not constitutionally mandated.") (citing cases from the Fourth, Eighth, and Ninth Circuits).

In Ground 5 petitioner claims his retention in close management was due to a 2004 assault which provided the basis for his initial placement in close management.  He therefore contends that his retention in CMIII violates double jeopardy principles.  The Fifth Amendment states in part that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double Jeopardy Clause protects individuals against three distinct violations: (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and (3) "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).  Petitioner apparently relies on the

third of these types of abuses, arguing that prison officials punished him for the 2004 assault by placing him in close management, and then punished him again by retaining him in close management for the same offense conduct that formed the basis of the initial placement. The Supreme Court has recognized, however, that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "in common parlance, be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98-99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (internal quotation omitted)). The Clause protects only against the imposition of multiple criminal punishments for the same offense. *Id*. at 99 (quotations omitted). The Double Jeopardy Clause does not apply to proceedings that are not "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Supreme Court has held that prison disciplinary proceedings are not part of a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

As the Eleventh Circuit explained in *United States v. Mayes*, 158 F.3d 1215, 1224 (11th Cir. 1998), "Prison officials have no authority to alter the inmates' original criminal sentences. They merely implement disciplinary proceedings that may, at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules." In *Mayes*, federal prisoners brought a double jeopardy challenge to criminal charges based upon the same offense conduct as disciplinary sanctions previously imposed by the federal Bureau of Prisons. The *Mayes* court held that the prison disciplinary sanctions imposed, which included a combination of disciplinary transfers to maximum security prisons, disciplinary segregation for 60 days, disallowance of between 41 and 94 days of accrued good conduct time, temporary losses of telephone, commissary, and/or recreational privileges, and losses of visitation privileges for up to one year, were not so punitive as to override the government's intent to create remedial administrative penalties for inmate misconduct. *Id*.

Accordingly, the court declined to classify the regulations as "criminal," and rejected the inmates' double jeopardy challenges to their subsequent criminal prosecutions. *Id.*

In light of the foregoing, petitioner cannot establish that his retention in close management constitutes criminal punishment for double jeopardy purposes. *Mayes*; *see also Taylor v. Gomez*, 182 F.3d 927 (9th Cir. 1999) (concluding that inmate's double jeopardy argument lacked merit in that the district court correctly reasoned that his custody classification "is not punishment, but rather a method for housing inmates based on their behavior"); *Langton v. Berman*, 667 F.2d 231, 233, 234 (1st Cir. 1981) (holding that punishing prisoner with 15 days isolation and loss of all privileges, including good-time credits, did not violate Double Jeopardy Clause because Double Jeopardy Clause applies only to criminal or quasi-criminal proceedings); *Welch v. Epps*, 103 Fed. Appx. 828, 829 (5th Cir. 2004) (addressing Mississippi inmate's claims regarding the point system of classification and holding that a mere change in custodial status does not qualify as a second "punishment" for double jeopardy purposes); *Garland v. Marfield*, No. 3:08cv261/RV/EMT, 2009 WL 22283 (N.D. Fla. Jan. 2, 2009) (rejecting inmate's claim that his placement on CMIII status violated the Double Jeopardy Clause because he was already punished for the disciplinary infraction by serving time in disciplinary confinement; stating "Plaintiff's custody classification is not 'punishment' for double jeopardy purposes."); *Butler v. McDonough*, No. 2:06-cv-206-FtM-29SPC, 2007 WL 2071530, at *8 (M.D. Fla. 2007) ("[Double jeopardy] protections apply to criminal trials, not disciplinary hearings or subsequent inmate classifications utilized by jail officials to maintain safety and security at the jail."). Based on the foregoing, petitioner is not entitled to federal habeas relief on his double jeopardy claim.

Claim 6 asserts that petitioner's retention in close management constitutes cruel and unusual punishment in violation of the Eighth Amendment. In assessing a claim of cruel and unusual punishment in violation of the Eighth Amendment, the

court must consider "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Cruel and unusual punishment, however, consists only of a level of punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976); *Campbell v. Sikes*, 169 F.3d 1353 (11th Cir. 1999). Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985). As the Supreme Court stated in *Rhodes*, "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, can not be free of discomfort." *Id.* at 349, 101 S.Ct. at 2400. Moreover, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399. Therefore, to state a claim for a violation of the Eighth amendment, a prisoner must first allege a condition that is an objectively "cruel and unusual deprivation," and second, that the officials responsible for the condition had the subjective intent to punish.

In the instant case, neither petitioner's allegations nor the description of CMIII conditions provided in the administrative rules suggest that petitioner is being denied the minimal civilized measure of life's necessities or subjected to a wanton and unnecessary infliction of pain. Because petitioner does not allege that he was deprived of adequate food, medical care, exercise, or sanitation, his conditions of confinement in CMIII do not, on their face, violate the Eighth Amendment. *Wilson*, 501 U.S. 294; *Rhodes*, 452 U.S. at 347; *see also, e.g., Sheley v. Dugger*, 833 F.2d 1420, 1428-29 (11th Cir. 1987) ("It is clear that administrative segregation and solitary

confinement do not, in and of themselves, constitute cruel and unusual punishment."); *Keller v. PA Bd. of Probation and Parole*, 240 Fed. Appx. 477, 480 n. 3 (3rd Cir. 2007)("We conclude, however, that confinement in a restricted housing unit does not in itself constitute cruel and unusual punishment in violation of the Eighth Amendment."); *Pabon v. Chmielewski*, 2008 WL 4400795, at *3 (M.D. Pa. 2008) (unpublished opinion) ("[T]he mere allegation that plaintiff was placed in restricted housing does not violate civilized standards of humanity and decency."); *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D. N.Y. 2002)("The conditions of special housing units do not per se constitute cruel and unusual punishment in violation of the Eighth Amendment."); *Evans v. Perkins*, 2007 WL 625922 (M.D. Ala. Feb. 27, 2007) (unpublished opinion) ("Neither classification of an inmate in a higher custody level nor his confinement in a more secure correctional facility alleges a sufficiently grave deprivation so as to rise to the level of cruel and unusual punishment.").

Nor does the length of petitioner's confinement in close management – four years – establish that his retention in CMIII violates the Eighth Amendment. The sole allegation in support of petitioner's Eighth Amendment claim is that "officers knew I should have been released in July 2008[.] They kept me confine[d] beyond the termination date of the [CM] sentence." (Doc. 1, p. 7 in ECF). Petitioner further contends that he was retained in CMIII "for no reason." (*Id.*, p. 22 in ECF). His state habeas petition reveals, however, that prison officials declined to release him to the general population because: "(1) Based on the seriousness of his initial placement for assault on another inmate. (2) His aggressive and violent behavior continues to present increased safety and security concerns warranting continued observation." (*Id.*, p. 13 in ECF). In light of these reasons, this court cannot say that petitioner's retention in CMIII "shocks the conscience, is grossly disproportionate to the offense, or is totally without penological justification." *See Sheley v. Dugger*, 833 F.2d 1420, 1429 (11th Cir. 1987).

Petitioner's final ground for relief, Ground 7, states simply, "Claims relating to continued retention in close management may properly be raised by petition for writ of habeas corpus." (Doc. 1, p. 7 in ECF). This jurisdictional statement provides no basis to find that petitioner is in custody in violation of the Constitution.

For the foregoing reasons, petitioner is not entitled to federal habeas relief, and the writ should not issue.

<u>Certificate of Appealability</u>

As amended effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1) challenging the Florida Department of Corrections' July 11, 2008 decision to retain petitioner in close management be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of January, 2010.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).